UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD LUNA,<br><br>    Plaintiff,<br><br>    v.<br><br>RONALD RAMBO,<br><br>    Defendant. | Civil Action No. 09-2331 (JEB) |

**MEMORANDUM OPINION**

In 2006, Plaintiff Richard Luna entered into a contract with an entity called the SCS Contracting Group, LP to renovate his home in Northeast Washington. Dissatisfied with its work after two months, Luna ordered SCS to vacate the premises in March 2007. He then sued SCS and its principals in D.C. Superior Court the next month, asserting various claims for misrepresentation, negligence, and violations of D.C. law. Two years later, the parties entered into a settlement agreement. One month later, Plaintiff turned around and filed this suit against Ronald Rambo, one of SCS's supervisors. Rambo has now moved for summary judgment, arguing that the settlement agreement and the doctrine of *res judicata* preclude this suit. Agreeing with the latter point, the Court will grant the Motion.

    **I.**    **Background**

On Dec. 8, 2006, Plaintiff and SCS entered into an agreement, whereby SCS was to renovate Plaintiff's residence at 1230 Linden Pl., N.E., in exchange for $158,500. See Compl., Exh. A (Agreement). Stephen C. Sieber, as owner of SCS, signed the contract. See id. at 4. Defendant Rambo started working full time for SCS in late 2005 or early 2006 and was a field

1

manager and later a master supervisor there.  See Motion, Exh. 1 (Declaration of Ronald Rambo) at 1.

The Complaint alleges that SCS began work on Jan. 19, 2007, following which Luna believed work was being improperly done, causing him ultimately to notify SCS to secure the house and vacate it.  See Compl. at 4-5.  Luna had paid SCS over $100,000 by the time he asked it to cease work.  Id. at 7.  Consistent with the contract, Luna paid some of that sum in checks made out to Sieber and some in checks made out to Rambo.  See Compl., Exh. D (images of checks); Agreement at 4.  He also alleges that he now has incurred over $200,000 in additional costs to return the home to a habitable condition.  See Compl. at 2.

On April 11, 2007, Plaintiff filed an action in the Superior Court against SCS, Sieber, and another SCS officer named Christopher Petito.  See Mot., Exh. 12 (Sup. Ct. Complaint).  In his 23-page Complaint, which lists 27 separate counts, Plaintiff alleged myriad misrepresentations and violations of D.C. consumer-protection laws, all arising from the work SCS did on his house.  Id.  As the docket sheet from this case amply demonstrates, the case, which included counterclaims, was extensively litigated until the parties agreed that all claims and counterclaims would be dismissed in Nov. 2009.  See Motion, Exh. 9 (docket sheet).  The dismissal finally occurred because the parties had entered into a settlement agreement on Oct. 28, 2009.  See Motion, Exh. 13 (Settlement Agreement).

According to the Agreement, entered into among Luna, Sieber, and SCS, the parties "desire to end the litigation between them because it has grown excessively burdensome to them, and [they] further desire to foreclose new litigation."  Id. at 1.  All parties to the Agreement consented to the dismissal of all claims against one another in any court.  Id. at 2.  The other terms demonstrated the parties' intent for a broad agreement and release of claims.

This Agreement notwithstanding, Luna then filed the current suit on Dec. 8, 2009, less than a month after his preceding suit had been dismissed as settled. In the instant Complaint he sues only Rambo, but makes the same claims arising out of the same facts as his prior case. This Court, believing that a resolution of the preclusive effect of the settlement agreement was advisable before engaging in full litigation, permitted limited discovery and briefing on this issue only. See Order of June 6, 2011. Rambo has now filed his Motion for Summary Judgment.

**II.     Legal Standard**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." Holcomb, 433 F.3d at 895 (quoting Liberty Lobby, Inc., 477 U.S. at 248). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, Inc., 477 U.S. at 248; Holcomb, 433 F.3d at 895.

The party seeking summary judgment "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." Taxpayers Watchdog, Inc. v. Stanley, 819 F.2d 294, 297 (D.C.Cir.1987). "Until a movant has met its burden, the opponent of a summary judgment motion is under no obligation to present any evidence." Gray v. Greyhound Lines, East, 545 F.2d 169, 174 (D.C. Cir. 1976). When a motion for summary

judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." Liberty Lobby, Inc., 477 U.S. at 255; see also Mastro v. Potomac Electric Power Co., 447 F.3d 843, 849–50 (D.C. Cir. 2006); Aka v. Washington Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*); Washington Post Co. v. U.S. Dep't of Health and Human Services, 865 F.2d 320, 325 (D.C. Cir. 1989).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in its favor. Laningham v. United States Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Liberty Lobby, Inc., 477 U.S. at 249–50; see Scott, 550 U.S. at 380 ("[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'") (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III.   Analysis

In moving for summary judgment, Defendant Rambo first argues that the Agreement bars this suit because Luna expressly released SCS, which includes Rambo. See Motion at 8-15. It is not disputed that under the Agreement, "Luna consents to the dismissal of all claims he may have against Stephen C. Sieber and the SCS Contracting Group, LP, in any Court . . . ." See Agreement at 2. The question is whether Rambo, as an agent of SCS, is protected by such

release from a suit against him individually.  The Court, however, need not decide this because the doctrine of *res judicata* provides Defendant an alternative avenue of relief.

"Under the doctrine of *res judicata*, 'a prior judgment on the merits raises an absolute bar to the relitigation of the same cause of action between the original parties <u>or those in privity with them</u>.'"  <u>Washington v. H.G. Smithy Co.</u>, 769 A.2d 134, 138 (D.C. 2001)(citation omitted; emphasis added).  In considering whether the doctrine applies, the Court focuses on: (1) whether the claim was adjudicated finally in the first action; (2) whether the present claim is the same as the claim that was raised or that might have been raised in the prior proceeding; and (3) whether the party against whom the plea is asserted was a party or in privity with a party in the prior case. <u>Patton v. Klein</u>, 746 A.2d 866, 870 (D.C. 1999).  All three requirements are met here.

First, given that Plaintiff's case was dismissed with prejudice, <u>see</u> Motion, Exh. 10 (Order of Dismissal), there was a final adjudication on the merits.  "[I]n civil suits, dismissal 'with prejudice' is said to operate as an adjudication on the merits, is entitled to *res judicata* effect, and thus bars further litigation between the parties on the same cause of action." <u>United States v. Lindsey</u>, 47 F.3d 440, 444 (D.C. Cir. 1995)(citing 9 Wright & Miller, <u>Federal Practice & Procedure: Civil</u> § 2364 (1995)), <u>vacated on other grounds</u>, <u>Robinson v. United States</u>, 516 U.S. 1023 (1995).

Second, the current Complaint tracks the previous one in all material respects.  First, both arise out of identical facts: SCS and its employees' work on Plaintiff's house.  See <u>Drake v. FAA</u>, 291 F.3d 59, 66 (D.C. Cir. 2002) ("Whether two cases implicate the same cause of action turns on whether they share the same nucleus of facts.") (citation and internal quotation omitted).  Second, the causes of action in the second suit all appear in the first: fraud, misrepresentation, lack of licensure, and violation of D.C. Consumer Protection Procedures Act.  Third, the relief

5

requested is materially identical: disgorgement of monies paid, incidental and compensatory damages, punitive damages, and treble damages under the DCCPA.  The only significant difference is that now the person sued is Rambo, as opposed to his superiors Sieber, Petito, and SCS.  In addition, there is no dispute that Plaintiff could have sued Rambo in the initial action; after all, he sued two of the other principals of SCS.  See id. ("Under *res judicata,* a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)) (emphasis added by Drake).

      Third, Rambo is in privity with the defendants in the earlier suit.  "A privy is one so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case."  Patton, 746 A.2d at 870.  A privy includes "'those who control an action although not parties to it . . . and those whose interests are represented by a party to the action."  Id.  Plaintiff has alleged in his Complaint that "[a]t all relevant times, RAMBO held himself out as an agent of The SCS Contracting Group, LP," see Compl. at 3, that he was "the person who selected, hired, directed, and supervised all relevant subcontractors, agents, materials and methods for SCS for the work," id. at 4-5, and that he accepted payments.  Id. at 6.  In such an instance, there can be little doubt that Rambo's interests in the previous suit were identical to those of SCS, Sieber, and Petito.  See  Advantage Health Plan, Inc. v. Knight, 139 F. Supp. 2d 108 (D.D.C. 2001) (granting motion to dismiss on *res judicata* grounds where plaintiff asserted same claims against executives of company it had previously sued successfully, but was unable to recover from when company filed for bankruptcy; defendant executives "were agents of [company] in all relevant respects . . . and thus were in privity with [it]").

Plaintiff in his Opposition does not seem to argue with the above analysis, but instead contends that summary judgment "is not proper primarily because the Sieber Settlement and the resulting dismissal . . . were rendered ineffective by Sieber's numerous breaches of the Sieber Settlement." Opp. at 2. In other words, Plaintiff maintains that dismissal of the earlier action "will not bar a subsequent action for the same cause when the defendant does not carry out the agreement and the plaintiff does not receive the benefit of the bargain." Id. at 3 (citing Interdonato v. Interdonato, 521 A.2d 1124, 1132 (D.C. 1987)). There are several flaws in this position.

To begin with, Luna claims that Sieber breached the Agreement by "attempt[ing] to contact Mr. Luna numerous times by telephone and e-mail, often successfully." Opp. at 4. This is hardly a material breach. See America v. Mills, 643 F.3d 330, 331-32 (D.C. Cir. 2011) (breach of settlement agreement must be material). It is true that in the Agreement Sieber agreed "not to contact or attempt to contact [Luna or his family], whether in person, by telephone, mail, e-mail, or any other means," see Agreement at 2, but this term appears quite minor when considered in the context of the Agreement itself and the preceding litigation. For example, there is nothing mentioned in the initial six "Whereas" clauses about a desire to terminate contact; instead, Luna desires to end "burdensome" litigation and "foreclose new litigation." Id. at 1. The central obligations Sieber undertook were to release and discharge Luna from all claims known and unknown and to dismiss all of his claims in all pending lawsuits. Id. at 2. The sole sentence about not contacting Luna appears as a "[f]urthermore" at the conclusion of a paragraph. The Court believes that, as a matter of law, this breach does not "relate[] to a matter of vital importance." America, 643 F.3d at 332 (internal quotation and citation omitted).

In addition, Luna himself concedes, "[i]n the interest of disclosure," that Sieber may have been contacting Luna in regard to a "prior, unsuccessful mediation." See Opp. at 5. If so, then these calls, "giving Sieber the benefit of the doubt," see id., may well not have been intentional breaches of the Agreement at all.

Even if the breach were material and intentional – both of which the Court finds are not the case – Plaintiff could not recover here. In Interdonato, the sole case upon which Plaintiff relies, the D.C. Court of Appeals held: "'Even though a suit is discontinued in accordance with an agreement of settlement, such discontinuance will not bar a subsequent action for the same cause where the defendant does not carry out the agreement and the plaintiff therefore receives no consideration for the discontinuance.'" 521 A.2d at 1132 (quoting 47 Am. Jur. 2d Judgments § 1096, at 153 (1969)) (footnote omitted). Given that Plaintiff received the central benefit of his bargain – namely, Sieber's release and dismissal of all claims – this is not a case in which Luna "receive[d] no consideration for the discontinuance." See Tsintolas Realty Co. v. Mendez, 984 A.2d 181, 187 (D.C. 2009) (no material breach where, even if failure to adhere to confidentiality provision, "discernible consequences . . . were nil").

Finally, it makes little sense here to permit Luna to sue Rambo even if Sieber had violated the Agreement merely by contacting Plaintiff. This might be a different case if Sieber had agreed to pay money or perform further construction and then reneged, leading Plaintiff to seek recovery from Sieber's agent. But here Sieber's calling or emailing Luna cannot by itself establish a basis for Luna to circumvent *res judicata* and sue Rambo on the very monetary damage claims he had just voluntarily dismissed against Sieber and SCS.

8

**IV.     Conclusion**

As the Court finds that the doctrine of *res judicata* bars this case, it will issue a contemporaneous order granting Defendant's Motion.


                                                                /s/ *James E. Boasberg*
                                                                JAMES E. BOASBERG
                                                                United States District Judge

Date:  January 27, 2012